## MATTER OF YANG

### In Section 245 Proceedings

### A-18534450

### *Decided by Regional Commissioner December 4, 1974*

The applicant for adjustment of status under section 245 of the Immigration and Nationality Act sought exemption from the labor certification requirement of section 212(a)(14) of the Act as an investor, pursuant to 8 CFR 212.8(b)(4). The investor status was claimed on the basis of applicant's purchase of $10,000 in shares of common stock of his employer's company (less than 1/10 of 1% of the outstanding shares). The application is denied for the reasons that the $10,000 investment in the company's stock had no bearing on any risk of the success or failure of the enterprise; it did not expand job opportunities for workers in this country; and because applicant, who was employed as a technician by the corporation, as one of 1,500 employees, was simply entering the job market without the required labor certification.

ON BEHALF OF APPLICANT: Joseph F. O'Neil, Esquire
100 State Street
Boston, Massachusetts 02109

This matter is before the regional commissioner on certification by the district director who on July 24, 1974 denied the application on the ground that the applicant is subject to the requirement of section 212(a)(14) of the Immigration and Nationality Act, as amended, does not have the labor certification for which that section provides, and is therefore inadmissible to the United States for permanent residence. Section 212(a)(14) provides, in pertinent part, as follows and makes the following aliens inadmissible to the United States:

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. . . . .

Federal Regulations provide for the exemption of certain classes of aliens from the labor certification mentioned above. One such class is defined in 8 CFR 212.8(b)(4) as follows:

147

(4) an alien who establishes on Form I-526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

The applicant claims to qualify for this exemption from labor certification requirements as an "investor."

He is a 44-year-old native and citizen of China who was admitted to the United States as a nonimmigrant student on February 20, 1969. Upon completion of his course of study in electronics in January of 1971 he was granted permission to engage in employment as practical training as a senior television technician at a Boston department store. On January 14, 1972 the Secretary of Labor, through his designated agents, denied an application for a labor certification filed by the department store in behalf of the applicant and dismissed an ensuing appeal therefrom. In dismissing the appeal, the Department of Labor said, "Information made available to this office indicates a considerable number of U.S. workers are available possessing the job classification in question."

On April 26, 1972, he applied for status as a permanent resident claiming exemption from the labor certification requirement stating that he would be a full time student for two years studying electronic engineering technology and that his wife would support him. His wife, a native and citizen of El Salvador, had already completed her studies here and had engaged in employment for eighteen months as practical training. She had also been denied a labor certification by the Department of Labor and had been granted a period of voluntary departure from the United States pending completion of her husband's studies. The applicant's request for permanent residence was denied on November 15, 1972, and he was instructed to depart from the United States by March 1, 1973.

He did not depart but in June of 1973 accepted unauthorized employment as an electronics technician with Transitron Electronics Corporation of Wakefield, Massachusetts. On June 18, 1974, the U. S. Department of Labor denied an application for a labor certification submitted by Transitron for the applicant's employment as an electronics technician because qualified resident workers were available. Thereafter on June 26, 1974 the applicant purchased $10,000 worth of the outstanding common stock of his employer, the Transitron Electronics Corporation, and filed the instant application two days later seeking permanent resident status as an investor exempt from the labor certification under 8 CFR 212.8(b)(4).

In denying the application the district director cited the *Matter of Ko*, 14 I. & N. Dec. 349 (1973), which held that "engaging" in an enterprise within the purview of 8 CFR 212.8(b)(4) contemplates full-time en-

gagement to an extent which demonstrates an assumption of risk and responsibility for the direction and control of the enterprise. The district director concluded that the applicant, a salaried employee of the corporation, assumes no risk and responsibility for the direction and control of the enterprise. He further found that the mere purchasing of $10,000 worth of common stock "over the counter" did not qualify the applicant for "investor" status as contemplated by the Federal Regulations.

Counsel, by brief on appeal, has attacked the district director's decision and asserts that the applicant has assumed a very real risk by the investment of $10,067.50 in Transitron Corporation. Counsel further maintains that the district director erred when he concluded that the applicant has assumed no responsibility for the direction and control of the enterprise because, as a shareholder, the applicant is entitled to perform such functions as voting at shareholder meetings, and the giving of written consents with respect to: (1) election and removal of officers; (2) adoption, amendment, and repeal of By-Laws; (3) shareholder resolutions, including ratification of Board of Directors' action; (4) extraordinary corporate matters including reorganization, merger, and disposition of assets.

Obviously, investment in common stocks involves an element of risk. However, we find in the case at hand that the risk relates entirely to the personal investment of the applicant. His $10,000 has no bearing on any risk to the success or failure of the "enterprise". His job as one of 1,500 employees of the firm does not rise or fall on his investment. It depends entirely on managerial considerations, whether he performs as required by his employer. To say that his ownership of less than one-tenth of one percent of the outstanding common shares of the corporation places the applicant in a position of responsibility for the direction and control of the enterprise is, in our opinion, pure fantasy.

Counsel cites the *Matter of Heitland*, 14 I. & N. Dec. 563 (1974), and paraphrases a portion of that decision as "the investment must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, . . ." He urges that the applicant's investment of $10,067.50 will have the effect of tending to expand job opportunities for American workers. We reject this position as erroneous on its face and factually indefensible.

In *Heitland* the Board of Immigration Appeals also said:

The regulation would be inconsistent with the statute were it to be construed to grant a labor certification exemption to an alien with an idle investment of a modest magnitude who might then be forced to enter the normal labor market in order to supplement the income from the investment. Rather than permitting an alien to usurp an existing job opportunity, the nature of the investment must be such that it *tends to guard against the possibility that the alien will compete with American labor for available skilled or unskilled positions.* (Emphasis supplied).

149

In the matter at hand, the applicant's employment as an electronics technician and his investment in his employer's corporation are unrelated to each other as far as the employer is concerned. His ownership of company stock does not substantially improve his job security which does not ride on his personal investment in the corporate shares of his publicly owned employing corporation.

Section 212(a)(14) was incorporated in the Act as a measure designed to protect the livelihood of workers lawfully present within the United States. It was intended to prevent "an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country." *Matter of Heitland,* supra.

In *Heitland* the BIA further noted:

> It is therefore necessary for us to adopt a test concerning substantial investments which comports with the congressional policy contained in section 212(a)(14). *The investment must be more than a mere conduit by which the alien seeks to enter the skilled or unskilled labor market.* Consequently, the investment either must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, or must be of an amount adequate to insure, with sufficient certainty that the *alien's primary function with respect to the investment, and with respect to the economy, will not be as a skilled or unskilled laborer.* (Emphasis supplied).

The present language of 8 CFR 212.8(b)(4), previously quoted, has been in effect since February 12, 1973 (see 38 F. R. 1379, January 12, 1973). Prior to the effective date of that amendment, 8 CFR 212.8(b)(4) declared as not being within the purview of section 212(a)(14) and exempt from the labor certification "an alien who will engage in a commercial or agricultural enterprise in which he has invested or is actively in the process of investing a substantial amount of capital."

In the paragraph reproduced above from *Matter of Heitland,* the BIA set forth certain criteria for determining whether an investment was a "substantial" one as that term was used in 8 CFR 212.8(b)(4) prior to its amendment. Nevertheless, it is our view that the amended language of that regulation must still "comport with the congressional policy contained in section 212(a)(14)", as the BIA has stated in that paragraph. Accordingly, we conclude that the criteria established by the BIA are equally applicable to cases of aliens seeking to qualify as "investors" for an exemption from the labor certification requirement under the present language of that regulation.

The applicant in the matter before us fails the test on all counts. He has entered the job market as a skilled laborer notwithstanding the finding of the U. S. Department of Labor that qualified residents are available to fill the position he now holds. We see his investment in

Transitron as a direct effort to offset the protective provisions of section 212(a)(14). His investment is insufficient to provide financial support without his entering the labor market as a skilled or unskilled laborer, which he has done, in order to supplement any income which his investment might produce.

We conclude that an alien who competes with United States citizens and lawful resident aliens for positions in the skilled or unskilled labor market cannot acquire an exemption from the labor certification requirement of section 212(a)(14) merely by purchasing over $10,000 worth of the outstanding common stock of the employing corporation.

Based upon a thorough consideration of all the facts before us including representations made on certification, we find that the applicant does not qualify for exemption from labor certification contemplated by 8 CFR 212.8(b)(4). Accordingly the district director's decision will be affirmed.

*It is ordered* that the denial of the application be and is hereby affirmed.