MATTER OF HEITLAND

In Deportation Proceedings

A-19492601

A-17587648

*Decided by Board January 25, 1974*

(1) A "commercial or agricultural enterprise" within the meaning of 8 CFR 212.8(b)(4) requires a business venture productive of some service or commodity.

(2) The nature of an "investment" within the meaning of 8 CFR 212.8(b)(4) must be such that it tends to guard against the possibility that the alien will compete with American labor for available skilled or unskilled positions.

(3) A Florida land holding (which appears to be of a speculative nature) and a savings bank account (which is more an accumulation of funds than an active entrepreneurial undertaking) do not qualify as "investments" within the meaning of 8 CFR 212.8(b)(4) for the purpose of exemption from the labor certification requirement of section 212(a)(14) of the Immigration and Nationality Act, as amended.

(4) To meet the test of "substantial investment" within the meaning of 8 CFR 212.8(b)(4) prior to its amendment of February 12, 1973, the investment must tend to expand job opportunities or must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment, and with respect to the economy, will not be as a skilled or unskilled laborer (*Matter of Finau*, 12 I. & N. Dec. 86, overruled).

(5) Where a truck valued at $3,400 is the sole property item used in a capacity productive of a product or service in the alien's delivery and merchandise business, the business is marginal, and rather than opening up new jobs the business has placed him in competition with other small delivery service drivers doing skilled or unskilled labor, the alien is ineligible for exemption from the labor certification requirement pursuant to 8 CFR 212.8(b)(4), under either the regulation as amended on February 12, 1973, or as it existed prior to that date.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer (female respondent)

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(20) [8 U.S.C. 1182(a)(20)]—immigrant not in possession of proper document

ON BEHALF OF RESPONDENT:
Jules E. Coven, Esquire
One East 42nd Street
New York, New York 10017

ON BEHALF OF SERVICE:
David L. Milhollan
Appellate Trial Attorney
Alexander Schonfeld
Trial Attorney

The Immigration and Naturalization Service has appealed the October 4, 1972 decision of an immigration judge which granted the respondents' applications for adjustment of status under section 245 of the Immigration and Nationality Act. The appeal will be sustained and the case remanded for further proceedings.

The alien respondents are husband and wife and natives of Germany. The male respondent is a citizen of Canada and the female respondent is a citizen of Germany. The deportability of each respondent has been conceded and the only issues presented by this appeal involve the grants of adjustment of status.

Section 245 of the Act specifies that an alien seeking this descretionary remedy initially must establish that he has been inspected and admitted or paroled into the United States, that he is eligible to receive an immigrant visa and admissible for permanent residence, and that an immigrant visa is immediately available at the time his application is approved. The respondents have been inspected and admitted as nonimmigrants and they appear to satisfy the "qualitative" provisions of the Act. Therefore, the question of their statutory eligibility centers on whether they qualify for the immigrant status which they seek and on the availability of visas for aliens of that status.

The respondents have sought this relief as nonpreference immigrants from the Eastern Hemisphere. A review of the Department of State Bulletins on Visa Availability indicates that nonpreference visas were currently available for Eastern Hemisphere immigrants during the months surrounding the hearing and decision below. Consequently, the respondents would have been statutorily eligible for adjustment of status if, at the date of the immigration judge's decision, they satisfied the requirements of section 212(a)(14) of the Act.

Section 212(a)(14) basically precludes the issuance of visas to certain aliens, including nonpreference immigrant aliens, who seek to enter the United States for the purpose of performing skilled or unskilled labor, unless they have obtained the required labor certification. The male respondent concedes that he must work to support himself and his family; furthermore, he acknowledges that he has not obtained labor certification. He nevertheless contends that he qualifies for an exemption from the labor certification requirements of section 212(a)(14) as an "investor" within the contemplation of 8 CFR 212.8(b)(4). On the date of the immigration judge's grant of the respondents' section 245 applications, that regulation stated, in relevant part:

The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require labor certification:

. . .

(4) an alien who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital.

The pertinent portion of this regulation, however, was modified subsequent to the Service's appeal in this case. See 38 Fed. Reg. 1380, January 12, 1973; 38 Fed. Reg. 8590, April 4, 1973. The regulation now permits the labor certification exemption for:

(4) an alien who establishes ... that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise. ...

It appears that the Service will consider any request for the "investor" exemption filed prior to the effective date of the new rule under whichever formulation of the regulation is more favorable to the alien, *Matter of Ko*, Interim Decision No. 2201 (Dep. Assoc. Comm. 1973). We shall follow that approach for purposes of this appeal.

The male respondent presently operates a merchandise and message delivery service. He owns a truck which appears to be equipped with a two-way radio. Orders for the pickup and delivery service are received over the two-way radio from a dispatching firm that subcontracts delivery work to numerous independent drivers. In 1970 the male respondent's gross income from the operation of this enterprise was $14,000; his net income was $4,500. It appears that the truck and the radio, which he values at $3,400, satisfy the capital requirements of his business. His claim to the "investor" exemption, however, includes a present "investment" of several thousand dollars in a savings bank account, and a 1964 "investment" of $3,600 in Florida land. He maintains that the land is now worth $11,000.

In order to assess whether the male respondent qualifies as an investor under either formulation of the regulation, we must initially ascertain the amount of his investment. This determination will depend on which of his property holdings can be considered as investments within the scope of the regulation. For a capital expenditure to qualify as an investment under either approach to the regulation, it is required to be made in a "commercial or agricultural enterprise." Although this phrase is not defined, we have concluded that the Florida land holding and the savings bank account do not qualify as investments within the contemplation of the regulation.

The land holding appears to be of a speculative nature, and the savings bank account, when viewed from the male respondent's perspective, is more an accumulation of funds than an active

entrepreneurial undertaking. A "commercial or agricultural enterprise," as we interpret this regulation, requires a business venture productive of some service or commodity. The regulation would be inconsistent with the statute were it to be construed to grant a labor certification exemption to an alien with an idle investment of a modest magnitude who might then be forced to enter the normal labor market in order to supplement the income from the investment. Rather than permitting an alien to usurp an existing job opportunity, the nature of the investment must be such that it tends to guard against the possibility that the alien will compete with American labor for available skilled or unskilled positions. Given the present character of these property items, we cannot say that they tend to expand the job market, or otherwise insure that the male respondent will not occupy an existing position readily available to American workers. Since the truck is the only property item which the male respondent employs in a capacity productive of a commodity or service, we find that the truck represents the extent of his investment within the regulation.

Since the value of this motor vehicle appears to be no more than $3,400, it is evident that the male respondent has not satisfied the $10,000 requirement of the present formulation of the regulation. He nevertheless maintains that this business investment, standing alone, qualifies him for the labor certification exemption under the earlier wording of the regulation as interpreted by our holding in *Matter of Finau*, 12 I. & N. Dec. 86 (BIA 1967). In *Finau* we held that the requirement of the old regulation regarding the investment of a "substantial amount of capital" did not mandate an absolute minimum capital outlay, but rather that the term "substantial" embraced a relative concept necessitating that the investment must be substantial only in relation to the total capital requirements of the particular enterprise. We also examined the skills which the alien possessed and considered the likelihood of success of the enterprise, even though these factors appear to be quite unrelated to whether a given investment is "substantial" or not. However, in view of the rationale behind the enactment of section 212(a)(14), we are convinced that the *Finau* approach to the regulation is unsatisfactory.

Section 212(a)(14) was incorporated in the Act as a measure designed to protect the livelihood of workers lawfully present within the United States. It was intended to prevent "an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country."[1] Consequently, the language of either approach to

---

[1] 1952 U.S. Code Cong. & Ad. News 1705.

the regulation must be construed in a manner consistent with the congressional purpose of safeguarding existing employment opportunities. This suggests an interpretation that would assure that the entering alien not be an individual likely to replace an existing American worker or fill a function readily available to American aspirants.

The *Finau* approach is inadequate for several reasons. Initially, the test we adopted there regarding the substantiality of an investment does not provide the necessary assurance that the alien's capital expenditure will not in fact tend to foster his entrance into the labor market as a skilled or unskilled laborer. Instead, a minimal capital investment in a marginal business might provide the necessary impetus for the alien to begin competing with existing workers when the economy of the given locality is not yet capable of adequately absorbing the alien. In addition, *Finau*, by requiring that the alien show adequate skills and a reasonable possibility of success, added elements to the regulation which do not bear on the substantiality of the investment. Finally, a literal reading of *Finau* might lead to an unwarranted denial of the "investor" exemption for an alien who seeks to enter the United States for the purpose of investing a large amount of capital in an enterprise whose magnitude is such that the alien's capital contribution is relatively insignificant. Accordingly, *Matter of Finau, supra,* is overruled.

It is therefore necessary for us to adopt a test concerning substantial investments which comports with the congressional policy contained in section 212(a)(14). The investment must be more than a mere conduit by which the alien seeks to enter the skilled or unskilled labor market. Consequently, the investment either must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, or must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment, and with respect to the economy, will not be as a skilled or unskilled laborer.

The male respondent has applied $3,400 of his own funds to a business which appears to be marginal in nature. Instead of being an investment with expansive employment propensities, his action has evidently placed him in competition with numerous other small delivery service drivers. This minimal investment does not adequately insure that the male respondent will not primarily function as a skilled or unskilled laborer, nor does it tend to offset any adverse impact which his employment may have on the job market. We do not deem this to be a substantial investment.

The male respondent's employment does not appear signifi-

cantly different from other taxi or delivery jobs. He is in a position which essentially involves skilled or unskilled labor. If there is a true shortage of American workers willing to accept this type of job, then obtaining labor certification would appear to be the proper procedure for the male respondent to follow. He is not, however, entitled to the "investor" exemption from the labor certification requirements of the Act.

Consequently, an immigrant visa was not and is not immediately available to the male respondent. He therefore was not statutorily eligible for a grant of section 245 relief. Similarly, the grant of that relief to the female respondent was inappropriate, because without her husband to support her she must also obtain a labor certification to qualify for an immigrant visa. The decision of the immigration judge was incorrect and the Service's appeal will be sustained.

As a result of the action taken by the immigration judge, the issue of voluntary departure was never reached. We shall therefore remand this case for further proceedings.

**ORDER:** The appeal is sustained.

*Further order:* The grant of adjustment of status to the respondents is withdrawn and the case is remanded to the immigration judge for any further proceedings that may be required.