**Madhukant Jinabhai MEHTA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 590, Docket 77–4180.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1978.

Decided April 6, 1978.

702

Edwin R. Rubin, Philadelphia, Pa. (Wasserman, Orlow, Ginsberg & Rubin, Philadelphia, Pa., of counsel), for petitioner.

Richard J. Leon, Sp. Asst. U. S. Atty., Brooklyn, N. Y. (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Patrick H. Barth, Asst. U. S. Atty. New York City, of counsel), for respondent.

Before FEINBERG, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Madhukant Jinabhai Mehta, an Indian national, petitions this court to reverse a decision of the Board of Immigration Appeals denying his application to be reclassified as a lawful permanent resident. The Board affirmed the Immigration Law Judge's findings that Mehta had failed to qualify for an investor exemption from the labor certification requirement. Mehta challenges the Board's interpretation of the investor regulation, and also claims that the Board should have remanded his case to the Immigration Judge in light of new evidence. We deny the petition.

I

Petitioner entered the United States on October 14, 1971 as a nonimmigrant visitor for pleasure. Permission to remain in this country under that designation finally elapsed on October 13, 1972. Meanwhile, Mehta had petitioned the Immigration and Naturalization Service (INS) for an adjustment of his status to "that of an alien lawfully admitted for permanent residence," pursuant to section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255.[1] Such a change in status is dependent upon the applicant's eligibility for an immigration visa. See section 245(a)(2). Certain categories of immigration visas, including sixth preference and nonpreference visas,[2] are in turn unavailable unless the

1. That section provides in relevant part:

(a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. The text of the statutes cited in footnotes 1–3 is current, differing only slightly, and in respects not material to this appeal, from the versions in effect at the time of Mehta's initial application.

2. See sections 203(a)(6), (a)(8) of the Act, 8 U.S.C. §§ 1153(a)(6), (a)(8), which provide:

(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:

. . . . .

(6) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a)(1) or (2) of this title, to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonable nature, for which a shortage of employable and willing persons exists in the United States.

. . . . .

(8) Visas authorized in any fiscal year, less those required for issuance to the classes specified in paragraphs (1) through (6) and less the number of conditional entries and visas made available pursuant to paragraph (7), shall be made available to other qualified immigrants strictly in the chronological order in which they qualify. Waiting lists of applicants shall be maintained in accordance with

applicant can either obtain a certification from the Secretary of Labor that his employment will not adversely affect the American labor market [3] or establish an exemption from this labor certification requirement. See 8 C.F.R. § 212.8 (1977); see also 29 C.F.R. § 60.3(c) (1976). Since Mehta was apparently eligible for sixth preference and nonpreference visas only, he based his initial application for readjustment on a prospective position as an employment counselor, which had been certified by the Secretary of Labor. When this job offer proved to be illusory,[4] the INS in July 1973 commenced deportation proceedings against Mehta. Shortly thereafter, Mehta again sought readjustment based upon a labor certification obtained from the Secretary of Labor—this time, purportedly as law clerk to an immigration attorney. However, during the protracted course of the deportation hearings, the alleged employer (who also had been petitioner's attorney before the INS) retired, and Mehta again was without a basis for his petition for readjustment.

Undaunted, Mehta purchased an existing oriental spices and handicrafts store in January 1975 in an attempt to qualify as an investor and thereby obtain an exemption from the labor certification requirement.

See 8 C.F.R. § 212.8(b)(4) (1974). Mehta thereafter modified his readjustment application accordingly. After taking evidence on this issue, Immigration Judge Lyons held that, even if Mehta could demonstrate the necessary $10,000 investment,[5] he still would not be entitled to the exemption because his marginal business operation did not create new job opportunities for the existing labor force. The Immigration Judge also denied petitioner's application as a matter of discretion in light of what he perceived to be petitioner's repeated attempts to deceive the INS. Finally, Judge Lyons refused to grant petitioner's application for voluntary departure.

Mehta appealed to the Board of Immigration Appeals and also moved before the Board to have his case remanded for consideration of new financial statements. The Board declined to remand the case, and affirmed the Immigration Judge's determination that petitioner was ineligible for exemption as an investor from the labor certification requirement. While the Board did not reach the question of discretionary denial of petitioner's application for adjustment of status, it did order that Mehta could depart voluntarily, reversing the Immigra-

---

regulations prescribed by the Secretary of State. No immigrant visa shall be issued to a nonpreference immigrant under this paragraph, or to an immigrant with a preference under paragraph (3) or (6) of this subsection, until the consular officer is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 1182(a)(14) of this title.

3. See section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), which provides:

 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

 . . . . .

 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and

available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title;

4. Apparently the offer had been arranged by petitioner's son without proper authorization from the corporate offeror.

5. The then applicable investor exemption regulations, 8 C.F.R. § 212.8(b)(4) (1974), required, inter alia, that the amount of the investment be at least $10,000. Judge Lyons indicated that petitioner's testimony and unaudited financial statements prepared by his accountant solely on the basis of information given him by petitioner did not clearly establish the necessary $10,000 investment.

tion Judge in this respect.[6] Mehta now petitions this court for relief. Before reaching his claims, however, we find it necessary to examine the regulatory framework in some detail.

## II

Section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), was originally enacted in 1952 to provide "strong safeguards for American labor" by excluding "aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor if the Secretary of Labor has determined that there are sufficient available workers in the locality of the aliens' destination who are able, willing and qualified to perform such skilled or unskilled labor. . . ." S.Rep. No. 1137, 82d Cong., 2d Sess. 11 (1952). This section thus permitted an alien laborer to enter the United States unless the Secretary of Labor acted to exclude him. In 1965, section 212(a)(14) was substantially amended to require that each alien seeking to work here obtain the certification from the Secretary of Labor discussed above.[7] Amended section 212(a)(14) clearly reflects a congressional intent to further "protect the American labor market from an influx of both skilled and unskilled foreign labor . . . ." S.Rep. No. 748, 89th Cong., 1st Sess. 15 (1965), U.S.Code Cong. & Admin.News 1965, p. 3333.

While the labor certification procedure embodied in the present statute does not itself provide for any exceptions, nonetheless, the INS has had an investor exemption regulation in one form or another for over ten years. The original exemption simply covered "an alien who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital. . . ." 8 C.F.R. § 212.8(b)(4) (1967). In *Heitland v. Immigration and Naturalization Service*, 551 F.2d 495, 499–500 (2d Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977), we upheld the Board's interpretation of this original regulation as requiring an evaluation of the investment's "likelihood of creating new jobs, as distinguished from merely taking advantage of existing employment opportunities. . . ."

In 1973, the original regulation was amended to exempt any

alien who establishes . . . that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,-000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

8 C.F.R. § 212.8(b)(4) (1974). This amended regulation, which was in effect at the time of Mehta's application for investor status, was administratively construed in *Matter of Ruangswang*, Interim Dec. # 2546 (B.I.A. Dec. 27, 1976), appeal docketed, No. 77–2375 (9th Cir. June 23, 1977). The Board there held that a self-employed alien, who had invested over $10,000 in a dry cleaning business, did not qualify as an investor because there was no showing that the "business expand[ed] job opportunities thereby offsetting any adverse impact on the alien's own employment." Thus, the Board in *Ruangswang* construed the more detailed 1973 regulation as it had interpreted the earlier, more general regulation at issue in *Heitland*, by requiring that the investment directly create job opportunities in order to qualify for an investor exemption. The

---

**6.** An alien who is allowed to depart "voluntarily" as opposed to being expelled involuntarily avoids the stigma of compulsory deportation and also retains the ability to choose his destination so long as he departs within the appointed time period. Moreover, future reentry into the United States is generally considerably eas-

ier for an alien who has voluntarily departed than for one who has been deported. See generally C. Gordon & H. Rosenfield, 2 Immigration Law and Procedure § 7.2 (1977).

**7.** See note 3 supra.

Board adhered to this approach in the case now before us.[8]

## III

■ At the outset, petitioner asks us to reconsider our decision in *Heitland v. Immigration and Naturalization Service, supra.* Petitioner argues that the Board's decision in *Matter of Heitland*, 14 I. & N. Dec. 563 (B.I.A.1974), had to be published in the Federal Register pursuant to the terms of the Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D), because that case overruled the Board's prior decision in *Matter of Finau*, 12 I. & N. Dec. 86 (B.I.A.1967). However, section 552(a)(1)(D) only requires that "substantive rules of general applicability . . . and statements of general policy or interpretations of general applicability *formulated and adopted by the agency*" (emphasis supplied), such as the investor regulation itself, be published in the Federal Register. Since the Board, which is a quasi-judicial part of the Justice Department, see 8 C.F.R. §§ 3.1(a)(1), (a)(3) (1977), interprets and applies INS regulations in the context of specific appeals, the Board's individual decisions do not constitute "substantive rules . . . formulated and adopted by the agency." Indeed, the Administrative Procedure Act itself makes clear that adjudicative opinions, such as those of the Board, need only be made available to the public and need not be published in the Federal Register. See 5 U.S.C. § 552(a)(2)(A); see also K. Davis, Administrative Law of the Seventies § 3A.7, at 73 (1976).

■ Apparently, Mehta also contends that, as a matter of fairness, the change in the Board's interpretation of the INS regulations had to be effected by rule making and not by ad hoc adjudication. Petitioner recognizes, as he must, that "the choice made between proceeding by general rule or by individual *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). Moreover, petitioner has not made out even a prima facie case of abuse of discretion here because there is no factual basis for a claim of unfairness or undue hardship to him. The Board decided *Matter of Heitland, supra,* almost a year before Mehta purchased his business in an attempt to establish investor status. Thus, petitioner's invocation of cases involving administrative action which retroactively rendered illegal previously appropriate conduct is unavailing. Furthermore, it is significant that the two earlier immigration cases supposedly relied upon by petitioner both concerned alien-owned businesses that employed members of the American work force. See *Matter of Finau*, supra, 12 I. & N. Dec. at 87; *Matter of Ko*, 14 I. & N. Dec. 349, 350 (Dep. Assoc. Commr. 1973).

■ Mehta further claims that the application of the *Heitland-Ruangswang* doctrine here constitutes an arbitrary change in administrative policy without a "clear and well reasoned analysis for the change in interpretation." However, the Board's interpretation of an INS regulation is entitled to considerable weight. See *Heitland v. Immigration and Naturalization Service,* supra, 551 F.2d at 499. And we have already held that the Board's interpretation of the original regulation was necessary to prevent the "circumvent[ion of] the purpose

---

8. In 1976, the investor exemption regulation was further amended to require a $40,000 investment "in an enterprise in the United States of which [the alien] will be a principal manager and that the enterprise will employ a person or persons in the United States who are United States citizens or aliens lawfully admitted for permanent residence, exclusive of the alien, his spouse and children." 8 C.F.R. § 212.8(b)(4) (1977). The employment requirement was thus expressly made part of the regulation. However, in promulgating this regulation the INS described this requirement as not constituting any change "because the investor exemption was never intended to apply to an alien who was making an investment in an enterprise which would provide only a means of livelihood for himself and his family in competition with citizens and permanent resident aliens having similar investments in like enterprises in this country." 41 Fed.Reg. 37566 (1976). The Immigration Law Judge properly did not apply this regulation to Mehta's application, because it was filed before October 7, 1976.

of the regulation, which is to protect American workers from unemployment attributable to an influx of aliens competing for a limited number of jobs." Id. at 500. While it is true that we there seemingly focused on the Board's reasonable interpretation of the word "substantial" in the then applicable investor regulation, see id. at 499, we do not think that the Board was precluded from continuing to analyze investments in terms of job creation under the amended regulation. Indeed, it was sensible for the Board to consistently protect the American labor market by construing the later, more stringent regulation as it had the earlier one. The Board's approach to the essence of the investor exemption under both regulations carried out the legislative purpose in section 212(a)(14) of excluding immigrants whose putative one-man operations "would likely displace a qualified American worker. . . ." H.R.Rep. No. 745, 89th Cong., 1st Sess. 14 (1965); see also S.Rep. No. 748, 89th Cong., 1st Sess. 15 (1965), U.S.Code Cong. & Admin.News 1965, p. 3328.

 Finally, there is substantial evidence in the administrative record to support the Board's determination that petitioner, who had the burden of proving his entitlement to an exemption,[9] did not qualify under the investor regulation. Based on petitioner's own testimony and unaudited financial statements, the Board was entitled to find that Mehta had bought an ongoing one-man retail operation, which barely supported him above the poverty line. Since the business employed none of the existing domestic work force, petitioner's investment only succeeded in replacing a resident laborer with an immigrant worker—exactly the result that Congress sought to avoid by enacting section 212(a)(14).[10] Nor do we think that the rule enunciated by the Board in *Heitland* and *Ruangswang* is inapplicable here merely because those cases involved service as opposed to retail businesses.

9. See C. Gordon & H. Rosenfield, 1 Immigration Law and Procedure § 2.40c, at 2–294 (1977).

10. It therefore follows that the Board's refusal to reopen or remand the deportation hearings

After a careful consideration of all of petitioner's arguments, we deny the petition. The decision of the Board of Immigration Appeals is affirmed.

was not an abuse of discretion because the proffered new financial statements failed to demonstrate that petitioner's business was directly creating new jobs.