**Eleftherios Michael PISTENTIS,
Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 79–1140.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Nov. 14, 1979.

Decided Dec. 27, 1979.

Edwin R. Rubin, Wasserman, Orlow, Ginsberg & Rubin, Philadelphia, Pa., for petitioner.

Robert S. Forster, Philadelphia, Pa., James P. Morris, Atty., Gen. Litigation and Legal Advice Section, Crim. Div., Chester J. Halicki, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and HUYETT, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question presented in this petition to review a decision of the Board of Immigration Appeals is whether the Board properly interpreted the investor regulation when it affirmed an immigration law judge's determination that Eleftherios M. Pistentis, a Cypriot national, had failed to qualify for an investor exemption from the labor certification requirement.[1] We grant the petition, vacate the Board's order, and remand the case for further proceedings.

### I.

Pistentis, the petitioner, entered the United States on August 29, 1975 as a nonimmigrant student authorized to remain until April 14, 1978. He remained past that date without permission of the Immigration Service. On June 17, 1976, petitioner entered an agreement by which he bought a dairy bar-grocery for $10,000. Five thousand dollars was paid on that date, by a loan granted petitioner by a bank and guaranteed by the seller, plus a five thousand dollar note given the seller by petitioner, payable in monthly sums. The following day, June 18, 1976, he submitted two applications to the Immigration Service, one for determination of his qualification as an investor and the other for adjustment of his

---

* Honorable Daniel H. Huyett, 3rd, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1.  8 U.S.C. § 1182(a)(14) provides:
    (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
    (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title . . . .
    Pursuant to this section of the Act, INS promulgated the "investor exception (or exemption)," 8 C.F.R. § 212.8(b)(4) (1976), which in 1976, when Pistentis first applied for the exemption, provided in part:
    (b) *Aliens not required to obtain labor certifications.* The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification:

    .    .    .    .    .

    (4) an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise. .    .    .

status to that of a permanent resident. On March 15, 1978, almost twenty-one months later, the district director denied both applications. The district director based his determination on a finding that petitioner had not invested $10,000 of his money, but only the proceeds of a $5,000 loan and his promise to pay additional monthly sums on the note. He gave Pistentis until April 14, 1978 to depart from the United States voluntarily without the initiation of formal deportation proceedings. Pistentis failed to leave, and on April 28, 1978 an order to show cause was issued alleging a deportation charge of overstay.

At the deportation hearing, petitioner through his attorney admitted the allegations of the order to show cause and conceded deportability. He designated Cyprus as the country to which he wished to be deported, but requested that he be allowed to leave voluntarily in lieu of deportation.

Petitioner also resubmitted his application for adjustment of status to that of a permanent resident, together with the application for investor status. In support thereof, petitioner claimed that at least twice before he filed his applications with the district director, he had unsuccessfully telephoned the Immigration Service to ask the meaning of the word "investment." On June 18, 1976, the day he filed his applications, he asked the receptionist if borrowed money was considered investment. He received no answer to his inquiry, but was told only to follow the instructions on the application. When he persisted, an interviewing officer told him she could not answer any questions until she had reviewed the file. He eventually had a meeting with the officer, at which he produced various pertinent documents. Subsequently, petitioner learned his applications had been disapproved.

After his purchase of the business, petitioner borrowed more money and bought additional equipment, expanding the type of goods sold and services provided. He had no employees until about six months after acquisition of the business, when a woman would occasionally tend the store while he was temporarily absent, such as on a trip to the bank. He paid her nothing, but did give her a few cartons of cigarettes a week. He claimed that his intention was to expand his business and hire employees as soon as his applications received favorable action. Petitioner's 1976 federal income tax return showed that his earnings for the half year from the business were $4,540.26. Petitioner's adjusted gross income from the business in 1977 was $9,435.60.

In his decision, the immigration judge questioned the INS attorney's position that respondent had failed to establish a $10,000 investment, but considered it unnecessary to decide the matter. *In re Pistentis*, File No. A18272241 (Immigration Court, Pittsburgh, Pa. August 4, 1978). He found that the Board's holding in *In re Ruangswang*, Interim Decision No. 2546 (BIA December 27, 1976), *rev'd*, 591 F.2d 39 (9th Cir. 1978), required a decision adverse to petitioner. *Ruangswang*, the immigration judge decided, held that an investment within the meaning of the pertinent regulation requires an expansion of job opportunities in the United States. He found that petitioner's business failed to expand job opportunities, and denied petitioner's application for investor status, and, consequently, the application for adjustment of status.

The immigration judge granted petitioner the privilege of departing voluntarily by a date to be set by the district director, and ordered his deportation to Cyprus should he fail to leave in accordance with the district director's instructions. The Board agreed with the immigration judge and dismissed the appeal, stating:

> We agree with the immigration judge's conclusion that where an investment fails to substantially expand job opportunities in the United States, it does not qualify as an exemption to the labor certification requirement of section 212(a)(14) of the Act. *Matter of Ruangswang*, Interim Decision 2546 (BIA 1976); *Matter of Heitland*, 14 I&N Dec. 563 (BIA 1974), aff'd *Heitland v. INS*, 551 F.2d 495 (2 Cir.), cert. denied, 434 U.S. 819, 98 S.Ct.

59, 54 L.Ed.2d 75 (1977). Where the only employment provided by an applicant's investment is to himself or his family, the application for adjustment of status as an investor must fail. *Mehta v. INS*, 574 F.2d 701 (2 Cir. 1978).

*In re Pistentis*, File No. A18272241, slip op. at 2 (BIA November 14, 1978). Pistentis filed a timely appeal in this court.

## II.

Central to what we believe to be a proper disposition of this case must be an account of developing immigration law in the critical period between the time of Pistentis' application for adjustment of status on June 18, 1976 and its denial on March 15, 1978. The controlling decision on the investor exemption prior to 1974 was *In re Finau*, 12 I. & N. Dec. 86 (BIA 1967). In *Finau*, the Board of Immigration Appeals construed the earliest version of the investor exemption which bestowed investor status on an alien "who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital . . . ." 8 C.F.R. § 212.8(b)(4) (1967) (promulgated at 31 Fed.Reg. 10021 (July 23, 1966)). It concluded that Finau's investment in a roofing business was "a substantial amount of capital" in relation to the nature and total capital requirements of the enterprise, and granted his application for investor status. 12 I. & N. Dec. at 89.

In 1974, however, the Board overruled *Finau* in *In re Heitland*, 14 I. & N. Dec. 563 (BIA 1974), aff'd, 551 F.2d 495 (2d Cir.), cert. denied, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Construing the same version of the investor regulation before it in *Finau*, the Board discarded the *Finau*

construction as "inadequate" and set forth a new construction of the regulation:

It is therefore necessary for us to adopt a test concerning substantial investments which comports with the congressional policy contained in, section 212(a)(14). The investment must be more than a mere conduit by which the alien seeks to enter the skilled or unskilled labor market. Consequently, the investment either must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, or must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment, and with respect to the economy, will not be as a skilled or unskilled laborer.

14 I. & N. Dec. at 567. Before the Board's decision in *Heitland*, but after the material facts therein, the INS promulgated a new investor regulation, which granted investor status to an alien who establishes

that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise. . . .

8 C.F.R. § 212.8(b)(4) (1974) (promulgated at 38 Fed.Reg. 8590 (April 4, 1973)). This regulation was in force when Pistentis filed his application for investor status on June 18, 1976. The Board construed this 1973 version of the regulation in *In re Ruangswang*, Interim Decision No. 2546 (BIA December 27, 1976),[2] announced six months

---

2. In reversing the Board's decision in *Ruangswang*, the United States Court of Appeals for the Ninth Circuit concluded that the Board's interpretation of the investor regulation was at odds with what the Ruangswangs could have objectively expected when they applied for an exemption.

What is clear in this case is that the interpretation of the INS is contrary to the plain language of the regulation, and that there was no reason for Mrs. Ruangswang to expect, when she sought to comply with the

regulation, that the requirements for receiving an adjustment of status would be anything other than the objective criteria set forth in the 1973 regulation.

*Ruangswang v. INS*, 591 F.2d 39, 43 (9th Cir. 1978). We do not reach the substantive merit of the agency's interpretation of the regulation, relying instead on the failure of the agency to accord Pistentis the most favorable law as required by *In re Ko*, 14 I. & N. Dec. 349, 352 (Dep.Assoc.Comm'r 1973).

after Pistentis filed his application. It relied heavily on *Heitland,* concluding that "the criteria [in *Heitland* are] applicable as well to the regulation before us in this case (which specified that the investment must be of at least $10,000)." *Id.,* slip op. at 5. In purporting to restate the test formulated in *Heitland,* the Board stated:

> To qualify for investor status, the nature of the investment must be such that the investor is spending his energies in the management of the investment, rather than in performing labor which can be performed by a worker already in the United States, unless the business expands job opportunities thereby offsetting any adverse impact on the alien's own employment.

*Id.,* slip op. at 6. Immediately before the *Ruangswang* decision, the INS once again changed the investor regulation, raising the capital requirement to $40,000 and adding the requirement that the alien be "a principal manager [of the enterprise] and that the enterprise will employ a person or persons in the United States . . . who are United States citizens or aliens lawfully admitted for permanent residence, exclusive of the alien, his spouse and children." 8 C.F.R. § 212.8(b)(4) (1977) (promulgated at 41 Fed.Reg. 37566 (September 7, 1976)). The parties agree that the regulation promulgated in 1976 is inapplicable to this case.

The rapid and substantial changes in the investor regulation, both by administrative rulemaking and case law precedent, enhance the significance of the Deputy Associate Commissioner's decision in *In re Ko,* 14 I. & N. Dec. 349 (Dep.Assoc.Comm'r 1973), which emphasized that "any request for labor certification exemption as an 'investor' filed previous to [a change in a relevant regulation] may be decided under either the current or previous regulation,

whichever is more favorable to the alien." *Id.* at 352 (emphasis added); *see also In re Chiang,* Interim Decision No. 2488, slip op. at 2 (BIA July 30, 1975); *In re Lee,* Interim Decision No. 2415, slip op. at 2 (BIA July 28, 1975); *In re Lui,* Interim Decision No. 2354, slip op. at 2 (BIA March 21, 1975). The implicit assumption[3] by the INS in *Heitland* is that case law interpretation of an administrative regulation is as valid as administrative rulemaking even when that interpretation effects a substantial change in the applicable standards. This assumption logically requires that the precept quoted from *Ko* be applicable to case law precedent as well as to the investor regulation itself. Thus, Pistentis should have been accorded the law most favorable to him, be it precedent or regulation, when the INS examined his application for change of status.

### III.

In rejecting Pistentis' application for change of status, the Board of Immigration Appeals relied on three decisions, *Mehta v. INS,* 574 F.2d 701 (2d Cir. 1978), *Ruangswang,* and *Heitland.* Only *Heitland* was decided before Pistentis filed his application. The precept announced in *Ko* requires us, therefore, to examine the *Heitland* opinion to determine if, fairly interpreted, it set forth the precept for which it was cited in *Pistentis.* The precept applied in *Pistentis,* slip op. at 2, was that when "an investment fails to substantially expand job opportunities in the United [S]tates, it does not qualify" under the investor exemption. Even if we were to agree with the INS that *Ruangswang* required the investment to expand substantially job opportunities in the United States,[4] we do not read *Heitland* as support for such an expansive proposition.

---

3. Given our disposition, we do not address the assumption by the INS that rules made by administrative rulemaking may be altered by adjudication rather than by resort to rulemaking. *See* 2 K. Davis, Administrative Law Treatise § 7.29, at 156 (2d ed. 1979).

4. The Board's citation of *Ruangswang* for the proposition that the investment must "substantially expand job opportunities in the United States," slip op. at 2, may exceed even the opinion in *Ruangswang.*

■ *Heitland* required that the investment either tend to expand job opportunities *or* be of an amount adequate to insure that the alien's primary function will not be as a skilled or unskilled laborer. Fairly read, the second alternative under *Heitland* may indeed, as Pistentis argues, allow an alien who works in his own business to claim investor status when his investment supports only him, without creating additional jobs. Shortly after deciding *Heitland*, for example, the Board wrote in another decision construing the investor regulation that "[i]n many instances a bona fide investor will properly be able to engage in activities of a skilled or unskilled nature. *Matter of Heitland*, Interim Decision 2259 (BIA 1974) . . . ." *In re Ahmad*, Interim Decision No. 2316, slip op. at 4 (BIA August 23, 1974). But our disposition of this case does not require us to determine whether, under *Heitland*, Pistentis should have been accorded investor status. Because we read *Ruangswang* to be a substantial change in immigration board case law,[5] we believe that the Board's application of *Ruangswang's* standards to an application filed almost six months prior to that decision was improper. Without relying on notions of fundamental fairness or estoppel, we simply hold the Immigration and Naturalization Service to the spirit of the administrative determination announced in *Ko*: Any request for labor certification exemption as an "investor" should be decided under either current or previous precepts, whichever is more favorable to the alien. Accordingly, in this case we believe that petitioner's application should be considered under immigration service decisions in force at the time of his application rather than decisions less favorable to him handed down thereafter.

## IV.

■ Because we are ordering a remand, we believe that an important issue should be met by the immigration judge in the first instance: whether petitioner had in fact established a $10,000 investment. Although actively presented in the case, the immigration judge decided that it was unnecessary to decide this issue. We disagree. We believe that the amount of the investment should have been a threshold determination.

Accordingly, the petition for review will be granted. The order of the Board of Immigration Appeals dated November 14, 1978 will be vacated and the cause remanded for proceedings in accordance with the foregoing.

---

5. Other decisions prior to the time when Pistentis filed his petition interpreted *Heitland* less broadly than the "substantially expand job opportunities" interpretation in *Ruangswang*. See *In Re Takayanagi*, Interim Decision No. 2472, slip op. at 3 (BIA February 12, 1976); *In re Chiang*, Interim Decision No. 2488, slip op. at 2 (BIA July 30, 1975); *In re Lee*, Interim Decision No. 2415, slip op. at 3–4 (July 28, 1975); *In re Yang*, Interim Decision No. 2335, slip op. at 5 (Reg'l Comm'r December 4, 1974); *In re Ahmad*, Interim Decision No. 2316, slip op. at 4 (BIA August 23, 1974).