**Manoj Manilal SANGHAVI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 79–3349
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 27, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

512

Jack. Wasserman, Mark A. Mancini, Washington, D. C., for petitioner.

Eric A. Fisher, Atty., Govt. Reg. & Labor Section, Dept. of Justice, Washington, D. C., for respondent.

Petition for Review of an Order of the Immigration and Naturalization Service.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Manoj Manilal Sanghavi is a native and citizen of India who last entered the United States in December 1973 as a nonimmigrant student with authority to remain in this country until June 30, 1975. Sanghavi concedes deportability but asserts that the Immigration and Naturalization Service (the "Service") improperly rejected his application for permanent residency on account of his eligibility for investor status under the Service's regulations. *See* 8 C.F.R. § 212.8(b)(4) (1976). We find that the Service was justified in rejecting appellant's application for investor status, and accordingly affirm.

█ Section 245(a)(2) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1255(a)(2), provides that the status of an alien may be adjusted to that of a permanent resident by the Attorney General in his discretion and under such regulations as he may prescribe if the alien is eligible to receive an immigrant visa and is admissible to this country for permanent residence. Under section 212 of the Act, 8 U.S.C. § 1182, a nonimmigrant alien is ineligible to receive a visa unless he possesses a labor certificate issued under section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), but Sanghavi did not qualify under that section. However, the Attorney General has promulgated regulations providing an exemption from the labor certificate requirement for any alien who

establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

8 C.F.R. § 212.8(b)(4) (1976).[1] Sanghavi contends that he was qualified under this regulation to obtain a visa to satisfy the eligibility requirement of section 245(a)(2) and thus becomes entitled to permanent resident status.[2]

Appellant applied for investor status on February 26, 1976. On February 28, 1977, the District Director found that Sanghavi had not met the requirements and an order to show cause why he should not be deported was subsequently issued. After a series of hearings, an immigration judge, in a decision dated February 1, 1979, affirmed the denial of adjustment of status. Appellant was given until April 1, 1979 to depart the country voluntarily. Prior to the deadline, he filed an appeal with the Board of Immigration Appeals. After oral argument, the Board dismissed the appeal and issued a written order dated September 4, 1979 giving appellant 30 days to leave the country voluntarily. Appellant then petitioned for review in this court pursuant to section 106 of the Act, 8 U.S.C. § 1105a.

■ In assessing appellant's claim for investor status, we note that an alien bears the burden of proving that he is eligible for relief from deportation. *Pelaez v. INS*, 513 F.2d 303, 305 (5th Cir. 1975), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 36 L.Ed.2d 124 (1975); *Vosough-Kia v. INS*, 441 F.2d 545 (9th Cir. 1971). Therefore, in the context of this case, appellant had the burden of proving that he had invested or was actively in the process of investing capital totaling $10,000 or more. At each step of the administrative proceeding, the appropriate authority found that appellant had not met this burden. We agree.

■ On his application, appellant purported to have invested the requisite amount in a business known as Kathy's Office Supply which was involved in office furniture sales. The business was operated from appellant's home and had no other employees besides appellant. The record shows that appellant testified that his business was only worth $2,000 and $3,000 as of August 1977, more than a year after the date of his initial application. Indeed, it was not until the middle of 1978 that appellant's business allegedly had a net worth greater than $10,000. Appellant asserts two reasons justifying his claim of investor status. First, he argues that the record shows that he obtained an $8,000 loan prior to his application which should have been aggregated with his capital investment to reach the $10,000 figure. Second, appellant relies on the language "actively in the process of investing" used in the regulation for the proposition that the alleged subsequent investment in 1978 was sufficient to qualify him for investor status at the time of his application.[3]

1. The regulation was amended effective October 7, 1976 to require a minimum investment of $40,000 instead of $10,000. *See* 8 C.F.R. § 212.8(b)(4) (1979). The Service argues that since appellant's investment did not occur until after the amendment of the regulation, appellant should be required to meet the $40,000 figure. In light of our holding that appellant did not even meet the lesser $10,000 figure, we express no opinion on whether the amended regulation controlled consideration of appellant's application.

2. An applicant who meets the objective prerequisites of the investor status exemption is merely eligible for adjustment of status and is not automatically entitled to such relief. *Faddah v. INS*, 553 F.2d 491, 495 (5th Cir. 1977). Relief is within the discretion of the Service and review of that discretion is quite narrow. *Jarecha v. INS*, 417 F.2d 220, 224–25 (5th Cir.

1969). We do not reach the question whether the Service would have been justified in denying adjustment of status under its discretionary authority since the Service properly found that appellant had failed to meet the objective criteria of the investor status exemption.

3. The Service also questions whether appellant had demonstrated an investment of $10,000 as of 1978. In 1978, appellant received a check for $10,000 from his family and deposited it in his savings account. He later transferred the amount to his checking account in order to facilitate investment in his business. There is no evidence in the record, however, demonstrating whether appellant actually invested these funds in the business except for the existence of a lease for office space signed in June 1978. Thus, considerable doubt exists whether appellant even met the $10,000 amount as late as 1978.

With respect to the $8,000 loan, the evidence adduced during the administrative proceeding is exceedingly sparse. The District Director found that of appellant's initial investment, $8,000 was in the form of a loan which was used to purchase office furniture for a specific job. When payment was received from the customer in question, the loan was repaid. While appellant stated that he made the loan "to establish his credit" and to purchase inventory, there is no documentary evidence concerning the loan. More importantly, there is no evidence concerning whether the money was permanently invested in appellant's business. Even accepting appellant's assertion that he used the money to purchase furniture, it is not clear whether this money was in fact "invested" in the business or merely used to finance a one-time purchase of furniture for sale as opposed to permanent investment in inventory. As a result, appellant has not met his burden of proving that the proceeds of the loan were invested in his business.

■ Appellant's second argument fares no better. To be sure, the language "actively in the process" of investing indicates that the regulation envisions a future-oriented examination of an alien's investment. Thus, the mere fact that $10,000 was not invested at the date of application would not be determinative of an alien's claim of investor status. Even though the regulation embraces future investment, this does not require the conclusion that appellant's alleged investment more than two years after his application was sufficient to meet the $10,000 requirement. Indeed, the regulation calls for the alien to be actively in the

process of investing which necessarily means that he must have the actual intent to invest the required funds and be pursuing a plan of investment. There is no evidence in the record that appellant had any definite plan or actual intent to invest additional capital at the time of his application. *See Matter of Heidari*, Interim Dec. 2581 (BIA 1977). Appellant's unsupported statement of his subjective intent to invest additional capital at some undetermined future time, especially in light of the fact that subsequent investment, if it actually occurred, did not take place until well over two years from the date of his application, is insufficient to meet his burden of proving that he was "actively in the process of investing." A holding to the contrary would eliminate the objective requirement of the investor status regulation by permitting an alien to allege in the most conclusory terms his future intent to meet the dollar amount of investment under the regulation without any specific plan for actually doing so.[4]

Since appellant's contentions are without merit, we affirm.

AFFIRMED.

---

**4.** The Service contends that the decision must also be upheld on the basis that appellant did not meet the test established in *Matter of Heitland*, 14 I&N Dec. 563 (BIA 1974), aff'd *Heitland v. INS*, 551 F.2d 495 (2d Cir. 1977), cert. denied, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) requiring that in order for an alien to qualify under the investor status exemption, his "investment must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs. . . ." 14 I&N Dec. at 567. *See Mehta v. INS*, 574 F.2d 701 (2d Cir. 1978). *But see Ruangswang v. INS*, 591 F.2d 39 (9th Cir. 1978). Appellant did not employ any Americans at the time of his application, although at the present time he employs two Americans. In light of our resolution of the other issues, we need not determine whether

the *Heitland* test is applicable or, if it is, wheth-
er appellant met its requirements.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.