677 F.2d 522
 FIRST NATIONAL MONETARY CORPORATION, Plaintiff-Appellee,
v.
COMMODITY FUTURES TRADING COMMISSION, Philip McB. Johnson,
Chairman, James M. Stone, Susan M. Phillips, and
David G. Gartner, Commissioners,
Defendants-Appellants.
MONEX INTERNATIONAL, LTD., Plaintiff-Appellee,
v.
COMMODITY FUTURES TRADING COMMISSION, Philip McB. Johnson,
Chairman, James M. Stone, Susan M. Phillips, and David G.
Gartner, Commissioners, and George H. Painter,
Administrative Law Judge, Defendants-Appellants.
 Nos. 81-1750, 82-1024 and 81-1803.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 23, 1982.
Decided May 3, 1982.
Order of Clarification June 9, 1982.
 
 Leonard R. Gilman, U. S. Atty., Detroit, Mich., Charles R. Mills, Nancy E. Yanofsky, Glynn L. Mays, Gregory C. Glynn, Associate Gen. Counsel, Commodity Futures Trading Com'n, Washington, D. C., for defendants-appellants.
 Donald F. Tucker, Southfield, Mich., Boyd Lemon, Los Angeles, Cal., Lawrence Silver, Beverly Hills, Cal., John D. Harwell, Memel, Jacobs, Pierno & Gersh, Los Angeles, Cal., for plaintiff-appellee.
 Before LIVELY and MERRITT, Circuit Judges, and WEICK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Before the administrative trial began, the District Court enjoined the defendant administrative agency from proceeding with an adjudicatory hearing to be conducted under section 5 of the Administrative Procedure Act, 5 U.S.C. § 554 (1976), against the plaintiffs, who are commodity dealers. It did so apparently on two theories: that the plaintiffs will be unable to get a fair trial before the agency and that the question of commodity law presented by the agency's administrative complaint against plaintiffs requires resolution first by rule making procedures under section 4 of the Administrative Procedure Act. We reverse. The record does not support an advance determination that the adjudicatory proceeding initiated by the administrative complaint will be unfair. Under applicable principles of administrative law the agency itself is entitled to choose in the first instance the administrative processes to be used in resolving the questions involved without prior judicial intervention or advance judicial clearance of its administrative processes. Thus the filing of a complaint initiating the adjudicatory proceeding does not constitute "final agency action" under section 10(c) of the APA, 5 U.S.C. § 704, subject to judicial review at this time. Upon completion of the administrative process, the agency's decision and its procedures will be subject to judicial review in the normal course under Chapter 7 of the Administrative Procedure Act.
 
 
 2
 * Plaintiff corporations are engaged in the purchase and sale of contracts for precious metals. Since 1975 Monex has sold gold and silver contracts directly to the public under a form of contract broadly labeled a "forward contract." First National Monetary Corporation has offered similar contracts, called "cash forward contracts" since 1978. Under both contracts the customer makes a down payment, and the dealer "forwards" the rest of the contract price, for which the customer is charged a fee. The contracts are usually liquidated by offsetting transactions rather than by taking delivery of the commodity under the contract. The administrative complaint alleges that the contracts are "futures" contracts and are illegal under the Commodity Exchange Act because not consummated on an exchange or regulated "contract market." Both corporations claim that these contracts are in the nature of "leverage" contracts potentially subject to regulation by the Commodity Futures Trading Commission. But they assert that the agency can only regulate the contracts through rule making procedures and not by adjudicatory administrative processes.
 
 
 3
 The federal administrative agency, the Commodity Futures Trading Commission, is charged with the responsibility of regulating "transactions involving contracts of sale of a commodity for future delivery...." 7 U.S.C. § 2 (1976). These "futures" contracts are subject to extensive regulation and must be executed through a commodities exchange or "contract market." 7 U.S.C. § 6h. Excluded from the term "future delivery," is "any sale of any cash commodity for deferred shipment or delivery." 7 U.S.C. § 2. A 1978 amendment to the Commodities Exchange Act gives the Commission authority to regulate "leverage" and "margin" contracts "for the delivery of silver bullion, gold bullion, or bulk silver coins or bulk gold coins," but "only after notice and opportunity for hearing." 7 U.S.C. § 23(b).
 
 
 4
 On September 5, 1978, the Commission Office of General Counsel submitted a memorandum to the Commission which stated that "all leverage transactions" in gold and silver are futures contracts subject to the Commission's regulatory authority. On the basis of this memorandum, the Commission solicited public comment on a proposal to regulate such leverage transactions. After analysis of public comment, which included comments by plaintiffs, the Commission announced a proposal to determine, effective January 1, 1980, that "leverage" transactions for gold and silver "of the type presently being offered to the public" are futures contracts.
 
 
 5
 On August 8, 1979, the Commission filed administrative complaints against plaintiffs charging that they are in violation of the Act by selling forward contracts other than through a contract market. On November 20, 1979, the Commission moved back the effective date of its decision to treat leverage contracts as futures contracts until June 30, 1980. On May 28, 1980, the postponement date was extended to October 1, 1982. The plaintiffs moved for a stay of proceedings against them until the October 1, 1982, date. An Administrative Law Judge granted the stay reasoning that because the Commission had decided to postpone the effective date of its decision to regulate leverage contracts, the same rationale should extend to adjudicatory proceedings. On interlocutory review the Commission vacated the stay, finding that the Administrative Law Judge had abused his discretion by equating "forward" contracts with "leverage" contracts. The administrative trial was set for November 23, 1981.
 
 
 6
 On November 18, 1981, Monex filed suit in the Central District of California, and First National filed suit in the Eastern District of Michigan. Both actions sought to enjoin the Commission from proceeding with the adjudicatory proceedings on grounds that the Commission must act by rule before it acts by adjudicatory order. The District Court in California issued a temporary restraining order and transferred the case to the Eastern District of Michigan. The District Court in Michigan also issued a temporary restraining order pending a hearing on the preliminary injunction. Following briefing and oral argument by the parties, the District Court granted a preliminary injunction in an oral opinion from the bench on December 17, 1981. The District Judge held that further exhaustion of administration remedies by plaintiffs was not required and that the Commission must act by rule making rather than adjudication in determining the question whether plaintiffs' "forward" contracts are "futures" contracts under the statute subject to execution only through commodities exchanges. It held that the filing of the administrative complaint constitutes final agency action and that it appeared that plaintiffs could not receive a fair administrative trial and disposition through adjudicatory proceedings. The District Court issued a preliminary injunction enjoining the administrative trial and restraining the conduct of further adjudicatory proceedings on the complaint issued by the Commission, finding that plaintiffs would suffer irreparable injury in the form of economic loss and injury to good will if the questions raised by the administrative complaint were decided by the agency through adjudicatory proceedings.
 
 II
 
 7
 Section 10(c) of the APA provides for judicial review only of "agency action" (1) "made reviewable by statute" and (2) "final agency action." It provides further that "preliminary" matters "not directly reviewable" are "subject to review on the review of the final agency action." 5 U.S.C. § 704. Since the complaint here is not "made reviewable by statute," the question is whether its issuance constitutes "final agency action." The District Court held that the filing of the complaint is a "final agency action." We do not agree.
 
 
 8
 If "final agency action" means the same thing as "final decision" under § 1291, Title 28, it is clear that the act of filing a complaint is interlocutory and not "final." We do not need to strictly equate the two in order to recognize the obvious fact that many of the same considerations of finality apply in defining the two concepts. See Pepsico, Inc. v. Federal Trade Comm'n, 472 F.2d 179 (2nd Cir. 1972), cert. denied 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973). The Supreme Court has also suggested that similar considerations apply in its recent decision concluding that the filing of an FTC administrative complaint initiating an adjudicatory proceeding against the oil companies is not "final agency action," Federal Trade Comm'n v. Standard Oil of California, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 46 (1980). Plaintiffs argue that Socal is not in point because here plaintiffs are attacking the "authority," the "power," of the agency to proceed by filing an administrative complaint preliminary to an adjudicatory proceeding. Socal cannot be so easily distinguished. Similar arguments were made there. The claim in Socal was that the agency acted beyond its delegated authority in issuing the complaint because it had not made necessary precomplaint findings. The Supreme Court discussed the finality considerations as follows:
 
 
 9
 Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise.... Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.... Finally, every respondent to a Commission complaint could make the claim that Socal had made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes.
 
 
 10
 Socal, supra, 449 U.S. at 242-243, 101 S.Ct. at 494. Similar considerations apply here. In addition, as explained below, we disagree with the holding of District Judge Gilmore that the issuance of the complaint is so plainly beyond the jurisdiction of the Commission that the administrative proceedings must necessarily turn out to be void whatever their outcome.
 
 
 11
 Plaintiff makes two basic arguments, both of which the District Court apparently accepted, that the complaint initiating adjudicatory proceedings is so plainly beyond the Commission's power that a court should intervene at the outset to declare the proceedings a nullity. We disagree with both arguments.
 
 
 12
 First, plaintiffs ask us to assume in advance of the administrative trial and disposition that they will lose and that the administrative proceedings are "futile" (Brief of First National Monetary Corp., 45-47), that the administrative agency will act illegally, that a retroactive order will be entered punishing them unfairly and that they will be harmed irreparably before they can obtain judicial review and redress (id. at 57-70). The District Court appears to have accepted some or all of these propositions in its oral decision from the bench enjoining the agency in advance from hearing the case. We cannot accept these propositions in the absence of an administrative record which indicates that they are true. To the extent that the District Court in its oral disposition rested its decision on such predictions regarding the future course of administrative proceedings, we conclude that its findings are clearly erroneous and wholly unsupported by the present record. We do not know at this point what course the administrative proceedings will take, but we are not empowered to intrude into the administrative proceedings in advance on the basis of such assumptions. As the Supreme Court noted in Socal the plaintiffs will not be "bound by the Commission's decision until judicial review is complete," 449 U.S. at 241, 101 S.Ct. at 494, and the necessity of first litigating the issues before an administrative agency does not constitute irreparable injury, id. at 244, 101 S.Ct. at 495.
 
 
 13
 The plaintiffs' second argument is that the agency can do nothing in the way of adjudication respecting the plaintiffs' off-exchange "forward" or "leverage" metals contracts until the agency issues detailed regulations governing the conduct in question. To the extent that the court below accepted this argument before the administrative process was completed, it erred. Although it is true that the difference between "futures," "margin," "leverage" and "forward" contracts is unclear from both an economics and a legal point of view and although it is clear that the agency must address serious policy questions in determining under what circumstances it should permit the type of off-exchange metals contracts at issue here, we see nothing in this record to support at this time the District Court's conclusion that rule making procedures are inherently more productive of efficient policy making in this area than are adjudicatory proceedings. Where administrative officials are uncertain of the correct answer to a regulatory problem in the abstract, it is often not unreasonable for them to proceed on a case by case basis. The fact that the Commission changed its mind and decided to investigate the problem in an adjudicatory proceeding does not mean that the Commission has decided to "railroad" the plaintiffs. It may simply mean that the Commission believes that an adversary proceeding with a factual record is the best way to define and resolve the issues because the initial effort at rule making indicates that the issues are more subtle and difficult than was first believed.
 
 
 14
 Unless Congress has acted to make the requirements of the commodities statute inoperative until the Commission issues implementing regulations applicable to commodities contracts for precious metals, we believe we must follow the general principle laid down in Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). There the company attacked the agency's administrative order entered after an adjudicatory hearing on grounds that the agency should have acted by rule under section 4 of the Administrative Procedure Act rather than by order under section 5. The Court said:
 
 
 15
 Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity.
 
 
 16
 In other words, problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. Or the agency may not have had sufficient experience with a particular problem to warrant regidifying its tentative judgment into a hard and fast rule.... In those situations, the agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceedings by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administration agency.
 
 
 17
 Id. at 202-03, 67 S.Ct. at 1580.
 
 
 18
 Contrary to plaintiffs' argument, Congress itself has not required the Commission to engage in rule making respecting "margin" and "leverage" contracts prior to adjudication. The statute permits cash contracts off the commodities exchanges, but requires futures contracts to be executed through the exchanges. With respect to "margin" and "leverage" contracts-terms left undefined by the statute-Congress has provided with respect to most commodities that such contracts are illegal. 7 U.S.C. § 23(a). With respect to "margin" and "leverage" contracts for gold and silver Congress has provided as follows:
 
 
 19
 No person shall offer to enter into ... any transaction ... under a standardized contract described in subsection (a) of this section, contrary to any rule, regulation, or order of the Commission designed to ensure the financial solvency of the transaction or prevent manipulation or fraud: Provided, that such rule, regulation, or order may be made only after notice and opportunity for hearing.
 
 
 20
 7 U.S.C. § 23(b) (Emphasis added). Under this provision of the statute, Congress does not expressly or by implication limit regulation of gold and silver "margin" and "leverage" contracts to rule making. It delegates authority to regulate by "order," i.e. adjudicatory proceedings, as well. We find nothing in the text of the statute or in the legislative history of the statute indicating an intent to prohibit the Commission from regulating metals contracts by adjudication. Nothing in the statute indicates that Congress intended for the Commission to act by rule before it acts by order so long as the parties are given notice and an opportunity to be heard.
 
 
 21
 The Circuit and District Court cases cited by plaintiffs for the proposition that the agency must act by rule before it acts by order are not in point. In Patel v. Immigration and Naturalization Service, 638 F.2d 1199 (9th Cir. 1980) and Ford Motor Company v. Federal Trade Commission, 654 F.2d 599 (9th Cir. 1981) (withdrawn from publication for reconsideration), the court had before it final agency decisions after adjudicatory hearings, including complete factual administrative records. The Court did not have to speculate about the facts, the nature of the industry, the administrative standard to be applied, the remedy or sanction to be imposed and the effect on non-parties similarly situated. This distinction is crucial. Judicial insistence on clear administrative findings and reasoned decision making as a condition of review and enforcement is irrelevant if courts are going to decide the correctness of the agency's procedures, remedies and substantive rules and principles before the agency ever hears the case. It may be that the agency's findings will be erroneous because the agency's law respecting commodities contracts will be erroneous. But we do not know at this point. We cannot decide that question before the findings are made and the law is developed. We will have "final agency action" to review when that process is complete. The issuance of the complaint is not final.
 
 
 22
 Accordingly, the judgment of the District Court is reversed.Order of Clarification
 
 
 23
 Subsequent to the decision of this Court in this case filed May 3, 1982, the appellant timely petitioned the Court pursuant to Rule 40(a), Fed.R.App.P., for the Court to clarify its opinion. In the recitation of facts the Court stated at page 524-525 of its opinion:
 
 
 24
 On November 20, 1979, the Commission moved back the effective date of its decision to treat forward contracts as futures contracts until June 30, 1980. On May 28, 1980, the postponement date was extended to October 1, 1982. (emphasis added)
 
 
 25
 This statement refers to decisions made by the Commission in the context of its rulemaking proceeding concerning leverage contracts involving gold and silver bullion and bulk coins. The question whether the "forward" or "cash forward" contracts offered by the plaintiffs are leverage contracts is an issue to be resolved in the administrative adjudicatory proceeding. To avoid any ambiguity the opinion of this Court should be clarified by substituting the words "leverage contracts" for the words "forward contracts." In all other respects the court adheres to its original opinion.