**GREATER LOS ANGELES COUNCIL ON DEAFNESS, INC., a California non-profit corporation, et al., Plaintiffs-Appellees-Cross-Appellants,**

v.

**COMMUNITY TELEVISION OF SOUTHERN CALIFORNIA, et al., Defendants-Appellants,**

and

**Department of Education, et al., Defendants-Appellants-Cross-Appellees.**

Nos. 80–5400, 80–5445, 80–6064, 80–6066, 81–5952, 82–5054 and 82–5280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1982.

Decided Nov. 2, 1983.

Abraham Gottfried, Stanley Fleishman, Los Angeles, Cal., J. Kendrick Kresse, San Leandro, Cal., for plaintiffs-appellees-cross-appellants.

Ann Buxton Sobol, U.S. Dept. of Justice, Edgar F. Czarra, Jr., Covington & Burling, Washington, D.C., for Dept. of Educ., et al.

Before GOODWIN, HUG, and BOO-CHEVER, Circuit Judges.

HUG, Circuit Judge:

This case requires us to consider the rights of hearing impaired television viewers under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.[1] The plaintiffs, a class of hearing impaired persons, argue the Act requires television stations that receive federal funding to provide open captioning of programs. When a program is open captioned, subtitles appearing at the bottom of the television screen translate the audio portion of the program. Defendants, the federal agencies that fund television programming and the private companies that produce and broadcast it, contend that any requirements imposed on them by the Rehabilitation Act can be satisfied by the use of closed captioning. A closed captioning system requires use of a decoder, which allows only viewers with special equipment to view the audio translation.[2]

The district court held that the federal defendants were required to promulgate regulations mandating standards of compliance by public broadcasting stations with Section 504 of the Rehabilitation Act of 1973. We hold that it is within the appropriate agency's discretion to determine whether to promulgate regulations or to implement the Rehabilitation Act through adjudication and conditioning its grants of funds. We therefore reverse the judgment against the federal defendants.

The district court also held that the private companies that produce and broadcast the federally funded programs did not violate the Rehabilitation Act. The Act does not mandate the production and broadcasting of federally funded programs with open rather than closed captions. We therefore affirm this portion of the judgment.

## I

### Procedural History

This action was brought by the Greater Los Angeles Council on Deafness, Inc.[3] and by two individual plaintiffs, Marcella Meyer and Sue Gottfried. The suit was certified as a class action on behalf of all hearing impaired persons within Los Angeles, Orange, Ventura, and Santa Barbara Counties. The complaint named two groups of defendants. The first, the "private defendants," included television station KCET, its officers, the Corporation for Public Broadcasting ("CPB"), and the Public Broadcasting System ("PBS").[4] The plaintiffs alleged that KCET, a recipient of federal funds, had violated section 504 by failing to provide open captioning of all programs broadcast by the station. CPB and PBS were also alleged to have violated section 504 by distributing federally financed pro-

---

**1.** Section 504, 29 U.S.C. § 794, provides in part:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
> 29 U.S.C. § 706(7)(B) defines "handicapped individual" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

**2.** Decoding equipment must be purchased by the hearing impaired viewer and attached to the individual television set. The approximate cost of the decoder is $250.

The cost of producing closed or open captioned programs is equal. Stations broadcasting open caption programs incur additional equipment expense.

**3.** The Greater Los Angeles Council on Deafness, Inc. was dismissed for lack of standing. That order has not been appealed.

**4.** CPB is a non-profit corporation that facilitates development of public broadcasting by making grants for local station operations, program production and distribution, and advertising.

PBS, a non-profit membership corporation, is a distributor to local stations of national public television programs.

An additional private defendant, the California Public Broadcasting Commission, was dismissed and is not a party to this appeal.

grams to KCET despite its failure to provide open captioning. The complaint sought to enjoin KCET's broadcast of non-captioned programs and CPB and PBS's distribution of funds and programs to all stations broadcasting such programs. Plaintiffs also requested compensatory and punitive damages.

The second group of defendants, the "federal defendants," originally included the Federal Communications Commission ("FCC") and the Department of Health, Education, and Welfare ("HEW"). When the latter agency was restructured in 1980, the Department of Education and the Attorney General were added to the federal defendants. It was alleged the FCC had failed to issue regulations requiring public broadcasting stations to comply with section 504 and that HEW (and later Education) had distributed funds to grant recipients who violated section 504. The Attorney General was alleged to have failed to enforce the non-discrimination provisions of section 504. The plaintiffs sought promulgation of appropriate regulations, termination of funding to grantees not complying with section 504, and recovery of funds previously distributed to non-complying stations.

The case came to trial in February 1980. After the plaintiffs presented their case, all defendants moved for dismissal of the action under Fed.R.Civ.P. 41(b). In an alternate motion, HEW agreed that section 504 applied to public broadcasters who are recipients of federal funds, and requested that the district court remand the case to HEW for development of a standard of compliance with section 504. Without ruling on the dismissal motions, the district court remanded to HEW. It ordered the Department to "develop, prepare and promulgate with all speed possible . . . a compliance standard that sets forth the obligations under section 504 of public broad-

casters that receive federal financial assistance."

HEW had begun exploring the use of captioning by public broadcasters prior to the passage of the Rehabilitation Act in 1973. It contracted for a study of the acceptability of captioning programs, and inferred from the study that captioned television would be feasible only if some means were developed to display captions only on the sets of hearing impaired persons, without interfering with the reception of the hearing audience. Because it seemed likely that public broadcasting stations employing open captions would lose viewers to private stations, HEW decided to work towards development of a closed captioning process. Grants were issued and contracts entered into for the development and manufacture of such a system. HEW then inserted in its film production contracts the condition that all federally funded programs be closed captioned, and began closed captioning of programs in its film library. These developments paralleled the early stages of this litigation, and shortly after the district court remanded the case to HEW, the closed caption system developed by the agency began operating.

The task of promulgating regulations under the remand order fell to the newly organized Department of Education. After requesting and receiving two stays of the order, the Department published a notice of intent to promulgate regulations and, at a subsequent status conference, advised the court of its progress on the new rules. However, in August 1981, the Department advised the court that under its interpretation of section 504, KCET had complied by transmitting with closed captions those programs the Department required to be produced with such captions. It further advised the court it had abandoned its rulemaking efforts, and would proceed instead by adjudication and imposition of contract conditions.[5] The court then ordered re-

---

**5.** In a separate administrative adjudication, the Department had imposed on KCET the requirement that it broadcast with closed captions all programs received from the Department that were captioned. It concluded KCET was not required to add closed captions to programs produced without them, since that would impose an unreasonable financial burden on the station.

sumption of trial to determine if the Department's new position satisfied its responsibilities under the Rehabilitation Act.

Prior to trial the private defendants renewed their Rule 41(b) motions for dismissal. These were granted, the court concluding that section 504 did not require KCET, CPB, and PBS to take affirmative action to provide access to television programming, and that therefore no violation of the section had been proven.

Following presentation of the federal defendants' case, the court entered judgment for the plaintiff class against the federal defendants. The court concluded that, because of the Government's failure to promulgate regulations implementing section 504, hearing impaired viewers had been subjected to discrimination and denied the benefit of federally funded programs. This was held to violate both the Rehabilitation Act and the Constitution. The court also concluded that closed captioning was not a reasonable means of assuring non-discriminatory access to television programs, thus implying that only open captioning would comply with the Rehabilitation Act. The court enjoined the Department of Education from granting or disbursing any federal funds for the production or broadcasting of television programs until it promulgated regulations consistent with the court's conclusions. It exempted from the injunction the disbursement of funds for projects developing or employing an open captioning system. The judgment also required the FCC and the Attorney General to promulgate section 504 compliance standards. The plaintiffs were awarded costs and attorneys' fees.

The federal defendants appeal, challenging the requirement that they promulgate regulations and terminate funding.[6] The class representatives cross-appeal the judgment dismissing the private defendants. The private defendants filed a protective appeal to challenge their loss of funding under the judgment. All parties' appeals were consolidated for our review. In addition, eight associations advocating the rights of handicapped and hearing impaired persons filed an *amicus curiae* brief.

## II

### *Exhaustion of Remedies*

■ Plaintiffs had administrative proceedings pending before both the FCC and HEW when they initiated this action in district court. The private defendants argue that the district court erred in granting the plaintiffs relief prior to the exhaustion of those administrative remedies. The Supreme Court has held that exhaustion of administrative remedies provided by Title IX of the Education Amendments of 1972 is not required prior to filing a private court action. *Cannon v. University of Chicago*, 441 U.S. 677, 706 n. 41, 99 S.Ct. 1946, 1962 n. 41, 60 L.Ed.2d 560 (1979). The administrative procedures under section 504 are the same as those under Title IX. 29 U.S.C. § 794a(a)(2). Accordingly, we have held that section 504 remedies are inadequate and that exhaustion is not required. *Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir.1980). Plaintiffs did not, therefore, improperly bring this action even though administrative actions were pending. The resulting redundancy of proceedings was untidy, and wasteful of judicial resources, but did not require dismissal.

## III

### *Termination of Funding*

■ The district court ordered the Department of Education to terminate funding of television programs pending promulgation of regulations. We find nothing in the structure of the Rehabilitation Act that authorizes court-mandated termination of funds upon the request of a private plaintiff. Withholding of funds is a "severe" remedy that an agency can invoke "to avoid the use of federal resources to support discriminatory practices." *Cannon*, 441 U.S.

---

6. The federal defendants challenge the award of costs and attorneys' fees in a separate appeal that has been referred to another panel of this court. The resolution of that claim awaits the outcome of this appeal.

at 704–05, 99 S.Ct. at 1961–62. The agency is required to follow specific statutory procedures, and is permitted to terminate funding only after making an express finding that a particular recipient has failed to comply with a funding requirement. 42 U.S.C. § 2000d–1; *see* 29 U.S.C. § 794a(a)(2). No such finding was possible in this case. Moreover, nothing in the statute suggests a private plaintiff may avail herself of this remedy. *See Cannon,* 441 U.S. at 704–06, 99 S.Ct. at 1961–62 (contrasting public and private remedies). The district court thus erred in ordering HEW to terminate funding pending promulgation of regulations.

## IV

### Promulgation of Regulations

#### a. *Attorney General*

■ The Office of the Attorney General is responsible for coordination of implementation and enforcement of the non-discrimination provisions of section 504. Exec.Order No. 12,250, 3 C.F.R. 298 (1981), *reprinted in* 42 U.S.C. § 2000d–1 note. This responsibility entails the review of proposed regulations, but not their promulgation. 28 C.F.R. § 41.4 (1981); *see also Community Television v. Gottfried,* —— U.S. ——, ——, 103 S.Ct. 885, 893, 74 L.Ed.2d 705 (1983) (responsibility for enforcing section 504 lies with agencies administering federal financial assistance programs). The district court thus erred in ordering the Attorney General to promulgate regulations.

#### b. *FCC*

■ The district court's order requiring the FCC to promulgate regulations is inconsistent with the Supreme Court's decision in *Community Television.* The Court held that because the FCC is not charged with administering funds under section 504, it has no responsibility for enforcement and no duty to promulgate regulations. *See* —— U.S. at ——, 103 S.Ct. at 892. The judgment as to the FCC was therefore granted in error.

#### c. *Department of Education*

■ The Department argued before the district court that it could properly interpret and enforce section 504 through two alternatives to promulgation of regulations: (1) adjudication of complaints against funding recipients, and (2) conditioning of grant awards on compliance. The plaintiffs contended, and the court apparently concluded, that the Government was estopped from abandoning its rulemaking efforts since the litigation had been delayed on the Government's representation that regulations were being prepared. However, the Government preserved its claim that it need not issue regulations at all stages of the proceedings below. It specifically appealed the two orders of the trial court that it issue regulations, and in each case obtained a stay. Moreover, an estoppel theory generally cannot be asserted against the Government. *See, e.g., Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). We therefore conclude the Government was not barred from abandoning its efforts to promulgate rules, and we consider the merits of this issue.

■ The district court erred in ordering the Department of Education to proceed by rulemaking. The decision whether to proceed by adjudication or rulemaking "lies in the first instance within the [agency's] discretion." *NLRB v. Bell Aero-Space Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); *see Montgomery Ward & Co., Inc. v. F.T.C.,* 691 F.2d 1322, 1328 (9th Cir.1982). In some instances proceeding through rulemaking may be "better, fairer, and more effective," *Community Television,* —— U.S. at ——, 103 S.Ct. at 893, because it provides clear notice to those regulated. *See, e.g., Montgomery Ward,* 691 F.2d at 1332; *Patel v. INS,* 638 F.2d 1199, 1204 (9th Cir.1980). However, no such circumstance is presented by this case because the plaintiffs are not regulated parties. We hold the decision not to promulgate rules at this time was not an abuse of discretion.

In *Community Television,* the Court considered federal agencies' enforcement pow-

er under section 504. It suggested that enforcement could be achieved by attaching conditions to the stations' federal grants, "[o]r regulations *may* be promulgated under the Rehabilitation Act that impose special obligations on the subsidized licensee." —— U.S. at ——, 103 S.Ct. at 893 (emphasis added). Contrary to the plaintiffs' assertion, *Community Television* contains no suggestion that the Government must proceed by rulemaking.

From a practical standpoint, the decision not to proceed by rulemaking will permit the Government to remain responsive to the developing technology in this area. Use of adjudication and contract conditions allows the Government to work with producers and broadcasters in developing programs that are accessible to hearing impaired viewers. The Department has taken the lead in developing this technology and has developed expertise to which we must defer. We thus cannot say that the Department is not entitled to implement whatever enforcement duties it has in this area by methods other than rulemaking. On the record before us, and in light of the strong policy of separation of powers and the broad discretion granted the executive agency, we hold that the trial court erred in requiring the Department of Education to promulgate rules.

## V

### Dismissal of Private Defendants

■ The Supreme Court's decision in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) interpreted compliance standards under section 504. In determining what compliance with section 504 entailed, the Court took as its starting point this statutory language: "No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." It concluded that, by its own terms, section 504 does not require a federal fund recipient to make substantial

modifications in, or to alter the nature of, regular programs to allow disabled persons to participate. *Id.* at 405, 99 S.Ct. at 2366. The Act mandates "evenhanded treatment of qualified handicapped persons." *Id.* at 410, 99 S.Ct. at 2369. It does not "impose an affirmative action obligation on all recipients of federal funds." *Id.* at 411, 99 S.Ct. at 2369.

■ Television broadcasting and production by its nature is composed of visible and audible components. The loss of hearing on the part of viewers impairs their ability to receive and enjoy the audio component. Some sort of affirmative modification of normal television broadcasting is required in order to compensate for the deaf and hearing impaired viewers' inability to receive the audio portion. In applying the *Davis* analysis to this situation, the district court has correctly concluded that the private defendants did not violate section 504 by failing to take affirmative action to caption or sign all of the programs broadcast.

We do not disagree with plaintiffs and *amici* that the development of captioning systems is of great benefit to the hearing impaired viewers and that making television more available to the deaf and hearing impaired is a highly desirable social objective. The activities and expenditures of the Department of Education and its predecessor HEW in developing the closed caption system and in requiring that all programs it funds be produced with closed captions is clear governmental recognition of this desirable objective. The Department of Education has further required as a condition of its grants that the public broadcasting stations, such as KCET, broadcast with closed captions those programs produced with closed captions. The district court, in dismissing the private defendants, correctly determined that KCET, CPB, and PBS are not compelled by section 504 to take further affirmative action to compensate for the inability of the hearing impaired viewers to receive the audio portion of the broadcast.

## VI

### Constitutional Claims

The plaintiffs' constitutional claims are not well articulated. They apparently contend the first and fifth amendments impose on the federal defendants a duty of affirmative action to make television accessible to the hearing impaired. The district court's conclusion that such a constitutional obligation exists finds no support in any existing legal precedent.

The judgment dismissing the private defendants is AFFIRMED, and the judgment against the federal defendants is REVERSED. Each party shall bear its own costs on appeal.